FILED

May 3 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0478

DA 14-0478

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 46A

DOUGLAS W. JOHNSON,

      Plaintiff and Appellee,

  v.

WAYNE S. HANSEN TRUST; THE STATE OF MONTANA;
THE DEPARTMENT OF REVENUE of the State of Montana;
POWELL COUNTY, a body politic and corporate and
political subdivision of the State of Montana; LISA D. SMITH,
as Treasurer of Powell County, the unknown heirs, unknown
devisees and unknown creditors of each of the above described
individual Defendants who may now be deceased; and all other persons,
unknown, claiming or who might claim any right title, estate or interest
in or lien or encumbrance upon the real property described in the
complaint adverse to Plaintiff's title thereto, whether such claim
or possible claim be present or contingent,

      Defendants,

WAYNE S. HANSEN TRUST,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
                    In and For the County of Powell, Cause No. DV-13-41
                    Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jeffrey W. Dahood, Knight and Dahood, Anaconda, Montana

      For Appellee:

            Daniel Sweeney, Sweeney Law Firm, Butte, Montana

Submitted on Briefs: February 3, 2016
Decided: March 1, 2016
Amended: May 3, 2016

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Justice Jim Rice delivered the Opinion of the Court.  The Wayne S. Hansen Trust (Trust) appeals from two orders issued by the Third Judicial District Court, Powell County.  The Trust acquired tax deeds to three tracts of real property located in Powell County, previously owned by Douglas W. Johnson (Johnson).  The District Court's first order granted summary judgment to Johnson, declaring the tax deeds void, and the second order addressed the calculation of the final amount to be paid to the Trust.  We affirm and address the following issues:[1]

> 1.  *Did the District Court err by granting summary judgment to Johnson and declaring the tax deeds void?*
>
> 2.  *Did the District Court err in determining the final amount due to the Trust as purchaser of the tax liens?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶2     Johnson owned three parcels of real property located in Powell County that were valued collectively for tax purposes at $260,478.  After Johnson failed to pay the property taxes over several years, the Trust acquired tax deeds to the properties in December of 2012.  The Trust filed three quiet title actions for the respective properties in March 2013, and Johnson responded by filing his own quiet title actions on the properties.  Johnson alleged that the tax deeds issued to the Trust violated statutory procedural requirements and asked that the District Court set them aside and declare his ownership interest.

---

[1] The Trust raises 19 issues on appeal.  We refer counsel to M. R. App. P. 12(1)(b), providing: "Parties are encouraged to limit the number of issues to 4 or fewer."

¶3 In April 2013, upon the Trust's motion, Johnson deposited $20,000 into the Clerk of Court's trust account as a bond pursuant to § 15-18-411, MCA. Later, the District Court consolidated the six quiet title actions and dismissed Powell County and Powell County Treasurer Lisa Smith (Smith) as defendants, with the understanding that they would produce documents and other evidence as requested by the parties. In response to Johnson's requests, Powell County and Smith produced several hundred pages of records pertaining to the tax liens and deeds on the subject properties. Following a motion from the Trust, the District Court issued an order in October 2013, directing Johnson to deposit an additional $17,497.48 into the Clerk of Court's trust account, raising his deposit to $37,497.48.[2]

¶4 Johnson moved for summary judgment in December 2013, citing evidence obtained from the County to argue that both the County and the Trust had failed to comply with several statutes, and that the tax deeds were therefore void. The District Court granted summary judgment to Johnson in May 2014, finding multiple instances of statutory noncompliance in the tax deed process, and declared the tax deeds void. In the same order, the District Court denied another request from the Trust to order Johnson to deposit additional bond funds. On June 30, 2014, the District Court entered judgment,

---

[2] Although the District Court ordered Johnson to deposit additional bond funds, the amount Johnson was required to deposit was significantly less than what the Trust requested. In its motion, the Trust requested a deposit in the amount of $79,421.39. Included in that sum were accrued taxes for the years 2008, 2009, 2010, 2011, and 2012, penalties, interest, property insurance premiums, publication costs, court filing fees, trust administrative expenses, and legal fees. In ordering Johnson to deposit $37,497.48, the District Court specifically did not include trust administrative expenses or attorney fees.

ordering that Johnson's deposit be remitted to the Trust, and that a Certificate of Redemption for each of the properties be issued to Johnson.

¶5 On July 15, 2014, the Trust filed objections and a request for relief from the judgment pursuant to M. R. Civ. P. 54(c) and 58(e). On July 28, the Trust also filed a Motion to Alter or Amend the Findings and Judgment or for a New Trial. In both of these motions, the Trust argued that the District Court erred in granting summary judgment by ignoring genuine issues of material fact, and by failing to properly calculate the final amount owed to the Trust. The Trust contended that the District Court erred by denying the Trust's request for an additional bond deposit, arguing that the $37,497.48 deposited by Johnson, which had been calculated as of July 19, 2013, failed to account for additional taxes, interests, and costs paid by the Trust. In November 2014, the District Court issued an order partially granting and partially denying the Trust's motions. Specifically, the District Court denied the request to alter or amend the grant of summary judgment, but acknowledged that the judgment failed to "address the issue of taxes accrued or paid by either party during the pendency of the proceedings." Accordingly, the District Court ordered the parties to submit additional memorandum with supporting evidence "to address any discrepancy between the bond deposit returned to Defendant Hansen Trust and any final redemption amount that is still alleged owed."

¶6 After receiving additional briefing from the parties, the District Court issued an Order Regarding Final Redemption Amount in February 2015. The District Court noted that the Trust, in its additional briefing, had submitted the affidavit of the Trustee

5

Christian Hansen that "references unsubstantiated amounts for an additional bond deposit, accrued interest, and other disbursements, including property taxes for 2014, property insurance renewal costs, and court filing fees." However, the court further noted that "Defendant Hansen Trust does not provide any supporting documentation to show how it calculates the interest nor does it provide the Court with evidence of proof of payments . . . ." The District Court ruled that "based on the evidence presented to the Court, no additional redemption amount is due or owing to Defendant Hansen Trust."[3] The Trust appeals from the District Court's orders granting summary judgment and determining the final amount owed to it.

## STANDARD OF REVIEW

¶7 The Court reviews a grant of summary judgment de novo, performing the same analysis as does a district court. *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 36, 345 Mont. 12, 192 P.3d 186 (citation omitted). "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

---

[3] The Trust filed a third post-judgment motion for relief pursuant to M. R. Civ. P. 60(b)(1) and (5) on March 2, 2015, requesting that the District Court consider the "excluding of those receipts from its Memorandum as being an inadvertent mistake." The Trust included an affidavit and receipts that had not been submitted previously. This documentation contained the property insurance premium information, as well as receipts for the 2013 and 2014 tax year payments. The District Court denied this motion, finding the Trust's supplemental documentation was untimely. On May 11, 2015, Johnson filed a motion that requested the District Court to order the Powell County Treasurer to mail the tax bills for the properties to him, and not to the Trust. In its answer, the Trust argued that the District Court should use its authority *sua sponte* to resolve the discrepancy between the bond deposit and the redemption amount, and that the matter of the tax bills should be held in abeyance. By then, the appeal had been filed to this Court, and the District Court concluded that it was "divested of jurisdiction to address this matter further."

judgment as a matter of law." M. R. Civ. P. 56(c)(3). "In determining whether genuine issues of material fact exist, we must view all evidence in the light most favorable to the non-moving party." *Lorang*, ¶ 38.

> If the moving party meets its burden of demonstrating a complete absence of genuine issues of material fact, the burden then shifts to the non-moving party to set forth specific facts, not merely denials, speculation, or conclusory statements, in order to establish that a genuine issue of material fact does indeed exist. Finally, if no genuine issues of material fact exist, it must then be determined whether the facts actually entitle the moving party to judgment as a matter of law.

*Lorang*, ¶ 39.

¶8 "Our standard of review relating to conclusions of law is whether the trial judge's interpretation of the law is correct." *Moran v. Robbin*, 261 Mont. 478, 482, 863 P.2d 395, 398 (1993) (citing *Steer, Inc. v. Dep't of Revenue*, 245 Mont. 470, 474, 803 P.2d 601, 603 (1990)).

## DISCUSSION

¶9 *1. Did the District Court err by granting summary judgment to Johnson and declaring the tax deeds void?*

¶10 The Trust contends that the District Court improperly granted summary judgment and declared the tax deeds void. Generally, the Trust argues that summary judgment was improper because the record was incomplete and disputed issues remained.

¶11 Tax deed proceedings require strict compliance with the governing statutes:

> Tax deed proceedings implicate a property owner's fundamental interests. The purpose behind the tax lien sales statutes is to protect property owners and their rights to due process. Due to the important interests at stake, every essential and material step required by the tax deed statutes must be strictly followed. Such exacting compliance with the statutes is necessary

7

because the owner risks losing his or her real property for the failure to pay the property taxes. Often, very valuable property is lost for a mere pittance.

*Hansen Trust v. Ward*, 2015 MT 131, ¶ 26, 379 Mont. 161, 349 P.3d 500 (internal citations and quotation marks omitted). We have also held that "[i]n determining the sufficiency of the tax deed proceedings, the record alone is to be considered . . . ." *Moran*, 261 Mont. at 483, 863 P.2d at 398.

¶12    In his motion for summary judgment, Johnson asserted, among other claims of statutory violations, that Treasurer Smith had failed to provide the County Clerk and Recorder with a report of all persons and property owing taxes, in violation of § 15-16-301, MCA. The statute requires the county treasurer to "make a report to the county clerk and recorder in detail, showing the amount of taxes collected and a complete list of all persons and property then owing taxes." Section 15-16-301(1), MCA. As evidence of this failure, Johnson included a copy of a memo sent from Smith to the Powell County Clerk and Recorder on March 31, 2011, in which she acknowledged:

> Per [§] 15-16-301, MCA, on the third Monday of June of each year, I am required to provide you with a report of the amount of taxes collected, a list of all persons and property then owing taxes and a separate report showing the amount of taxes suspended or canceled. I don't know that this has ever been done. I know I haven't prepared these reports for you since I started . . . . The attachments provide these reports to you for fiscal years 2007, 2008, 2009[,] and 2010. Although the statutory date requirement has not been met, this will provide a starting point for future compliance with this statute.

In another memorandum, also dated March 31, 2011, Smith acknowledged that other reports required under § 15-17-214(2)(a), MCA, had likewise not been submitted to the

8

County Clerk and Recorder. Johnson also provided records of the procedures and notices employed in this case, and detailed how they failed to satisfy statutory requirements.

¶13 In *Isern v. Summerfield*, 1998 MT 45, 287 Mont. 461, 956 P.2d 28, the appellant taxpayer claimed that the district court had erred by granting summary judgment to the tax ~~deed~~ purchasers, and by concluding that multiple errors in the process did not void the tax deed. We agreed with the appellant taxpayer and reversed following a discussion of the statutory infractions, concluding, "[g]iven the requirement of strict compliance with statutory procedures for issuing a tax deed, . . . we hold that the errors and omissions discussed above void the subject tax deed . . . ." *Isern*, ¶ 21. The appellant taxpayer noted several statutory errors, including a failure to comply with § 15-16-301, MCA. *Isern*, ¶ 11. Similarly, here, Johnson demonstrated a violation of this same statute, as well as many other violations, from the records provided by the County. The District Court reviewed the records and correctly granted summary judgment to Johnson, identifying a total of thirteen errors in the tax deed process.

¶14 The Trust argues that the record was incomplete and that genuine issues of material fact remained, but fails to articulate exactly what those issues of fact are. The records cited by Johnson were clearly sufficient to establish several violations of the statutory tax deed process. After producing records regarding these tax deed transactions, Treasurer Smith submitted an affidavit wherein she stated that "additional documentation *may* exist that was not located during the week-long search" (emphasis added). The Trust emphasizes this statement in arguing that the District Court prematurely granted

9

summary judgment without giving the Trust the opportunity to conduct "original discovery." However, the Trust fails to show how the discovery of additional documentation could have changed the outcome—multiple statutory violations, sufficient to void the tax deeds, were already established by the uncontested evidence presented.[4]

¶15 We affirm the District Court's order granting summary judgment. Montana law clearly requires "exacting compliance with the statutes" governing the tax deed process, and the host of errors in the statutory procedure in this case required voiding of the deeds. *Hansen Trust*, ¶ 26.

¶16 *2. Did the District Court err in determining the final amount due to the Trust as purchaser of the tax liens?*

¶17 The Trust argues that the District Court failed to determine a proper equation or formula for calculation of the redemption amount[5] owed to it, that the District Court incorrectly ordered the bond deposit paid in lieu of redemption when the liens on the properties had not been properly extinguished, and that the final amount remitted by Johnson failed to include the proper interest, subsequent taxes, and costs.

---

[4] The Trust also argues that summary judgment was improperly entered because "revelations of the county's alleged nonfeasance, misfeasance, and knowledgeable contributions to the problems" in the tax deed process "constituted a genuinely disputed material issue." However, this was a quiet title proceeding in which the County claimed no interest in the property, and in which no claims against the County were filed, if any could have been. The District Court's dismissal of the county defendants was proper.

[5] We use the term "redemption amount" here because it has been used throughout the course of this case (e.g., the District Court's "Order Regarding Final Redemption Amount"), and has been used in our previous case law. *See, e.g., Hansen Trust*, ¶ 44. The term "redemption" is primarily used in statute to refer to the process of extinguishing a tax lien on a property by payment to the County, as codified in § 15-18-111, MCA, et seq., wherein the delinquent taxpayer or interested party is referred to as the "redemptioner." Section 15-18-112(2)-(3), MCA. However, the use of the term within the context here clearly refers to the amount to be reimbursed directly to the tax purchaser in tax litigation. *See also* § 15-18-412(2)(a), MCA.

¶18 A tax deed conveys to the tax purchaser, or "grantee," the "absolute title to the property described in the deed . . . ." *See* § 15-18-413(1), MCA. In addition, this "conveyance" from the county gives to the tax purchaser "the right, if the tax deed . . . [is] attacked and held irregular or void, to recover the unpaid taxes, interest, penalties, and costs that would accrue if the tax proceedings had been regular and it was desired to redeem the property." Section 15-18-413(2)(b), MCA.[6] The delinquent taxpayer may seek to have the tax deed declared void via a quiet title action, as happened in this case, and is referred to by statute as the "true owner." Section 15-18-411(1)(b), MCA. In such an action, the true owner may be ordered to deposit with the court:

> the amount of all taxes, interest, penalties, and costs that would have accrued if the property had been regularly and legally assessed and taxed as the property of the true owner and was about to be redeemed by the true owner; and the amount of all sums reasonably paid by the purchaser following the order and after 3 years from the date of the tax lien sale to preserve the property or to make improvements . . . .

Section 15-18-411(1)(c)(i)(A)-(B), MCA. Then, if "the true owner is successful in the action and the tax proceedings are declared void, the amount deposited with the court must be paid to the purchaser" of the tax lien. Section 15-18-412(3), MCA. This deposit "encourages prompt return of the property to the tax rolls" and "prevents unjust enrichment of the owner at the expense of the tax purchaser should the owner win." *Ball v. Gee*, 243 Mont. 406, 412, 795 P.2d 82, 86 (1990). "The deposit also lessens the

---

[6] We take this opportunity to clarify our discussion of this statute in *Hansen Trust*, ¶ 42. In describing the rights of the tax purchaser after a tax deed has been declared void, as provided by § 15-18-413(2), MCA, we stated that the term "conveyance" in the statute refers to a "new deed," presumably transferring the property back to the true owner. *Hansen Trust*, ¶ 42, n.4. However, as used here, the term "conveyance" actually describes the original conveyance from the county to the tax purchaser by way of the tax deed.

burden on the courts and the purchasers by precluding frivolous defenses." *Ball*, 243 Mont. at 412, 795 P.2d at 86.

¶19 Here, the two parties and the District Court all used different equations to calculate the final amount due to the Trust after the tax deeds were declared void, and we hope to clarify the statutory equation herein. First, as used in *Hansen Trust*, ¶ 44, the term "redemption amount" means the "amount reflecting the taxes, interest, penalties, and costs that would have accrued under normal circumstances." This amount, which a court may order to be deposited with the court, represents the amount the delinquent taxpayer or "true owner" would have had to pay to the County "if the property had been regularly and legally assessed and taxed as the property of the true owner and was about to be redeemed by the true owner." Section 15-18-411(1)(c)(i)(A), MCA. In other words, the statute requires a calculation as if redemption were taking place by a payment to the County at that moment in the litigation,[7] which consists of the "amount of taxes due, including penalties, interest, and costs, as of the date of the notice of pending tax deed issuance . . . ." Section 15-18-212(6)(e), MCA. In addition, "[t]he amount of interest and costs provided for in subsection (6)(e) continues to accrue until the date of redemption . . . ." Section 15-18-212(7), MCA. Thus, reading these provisions together, we conclude the redemption amount requires a calculation of a sum of the unpaid taxes, interest that accumulates at the statutory rate until the date of deposit, and the costs and

---

[7] Section 15-18-413(2)(b), MCA, contains very similar language, entitling a tax purchaser, in the event that the tax deed is declared void, to recover the amount that would have accrued "if the tax proceedings had been regular and it was desired to redeem the property."

penalties assessed up until the date of deposit. Additional interest that may accrue on this amount during further litigation and additional costs are discussed below.

¶20 The next amount required by statute to be repaid by the true owner is any property taxes on the property paid by the tax purchaser subsequent to issuance of the tax deed. Section 15-18-412(6), MCA, provides that the court "shall also determine the rights resulting from any additional taxes on the property accruing or being paid by either party during the pendency of the suit." If the tax purchaser has paid property taxes on the property subsequent to issuance of the tax deed, the true owner must reimburse this cost. *See also Hansen Trust*, ¶ 44.

¶21 The next item in the equation is costs. By statute, the true owner must deposit "the amount of all sums reasonably paid by the [tax] purchaser," after the court's deposit order and at least 3 years after the date of the tax lien sale, "to preserve the property or to make improvements on the property while in the purchaser's possession . . . ." *See* § 15-18-411(1)(c)(i)(B), MCA. Further, "costs" are also defined as those that are incurred by the tax purchaser and are "required by law." Section 15-17-121(2)(b), MCA; *Hansen Trust*, ¶ 42. We have held that, even if costs such as property insurance, administrative expenses, and attorney fees could be considered reasonable, they are not "required by law" and are not reimbursable. *See Hansen Trust*, ¶ 43.

¶22 Finally, there is the issue of additional interest that may be claimed during the course of litigation. As discussed above, the redemption amount necessarily includes the unpaid taxes, interest that accumulates until the date of deposit, and costs and penalties.

13

In *Hansen Trust*, we also affirmed the District Court's award of interest to the tax purchaser that had accumulated on the true owner's deposit during the litigation.[8] *Hansen Trust*, ¶ 41. However, the decision to award any such interest lies within the discretion of the presiding court, and a tax purchaser is not automatically entitled to such an award. *See* § 15-18-412(7), MCA.

¶23 Here, the District Court ordered Johnson to deposit $37,497.48, which included property taxes for tax years 2008, 2009, 2010, 2011, and 2012, accumulated interest on that sum assessed by the Trust, insurance premiums, court filing costs, and publication costs. As explained herein, there is no provision in the statutes entitling a tax purchaser to collect interest on the redemption amounts owed or other costs not expressly required by law. *See* § 15-17-121(2), MCA; § 15-18-411(1)(c)(i)(B), MCA. On the other hand, the Trust points out that the $37,497.48 amount was calculated only as of July 19, 2013, and did not include the subsequent taxes it paid for tax years 2013 and 2014. However, the Trust failed to submit the necessary documentation when ordered by the District Court, leading the court to conclude that the Trust had waived further reimbursement. While further proceedings, in light of this opinion, may well have resulted in both positive and negative adjustments in the amount properly payable to the Trust, its waiver of further reimbursement, and Johnson's lack of a challenge to the $37,497.48 ordered by

---

[8] The Court cited to § 15-18-412(3), MCA, as authority for awarding interest that had accrued on the deposit during the litigation. *See Hansen Trust*, ¶¶ 41, 47. However, interest is not referenced in that provision, and authority for this award is more properly derived from § 15-18-412(7), MCA, which provides that "[i]n the quiet title action, the court has complete jurisdiction to fix the amount of taxes that should have been paid, including penalties, interest, and costs, and to determine all questions necessary in granting full relief . . . ."

the District Court, leads us to the conclusion that affirming the judgment as entered is appropriate.

¶24    Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER